Howard A. Belodoff, ISB No. 2290
BELODOFF LAW OFFICE PLLC
1004 West Fort Street
Boise, ID 83702
Telephone: (208) 331-3378
Facsimile: (208) 947-0014
Email: hbelodoff@hotmail.com

Jeremiah M. Hudson, ISB No. 8364
FISHER RAINEY HUDSON
910 West Main Street, Suite 254
Boise, ID 83702
Telephone: (208) 345-7000
Facsimile: (208) 297-2689
Email: jeremiah@frhtriallawyers.com

*Attorneys for Plaintiffs and*
*Proposed Class*


## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REGIS HARVEY, AMANDA COLLINS, ANDREA MCDONALD, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 14-161 |
| *Plaintiffs,* | |
| v. | **CLASS ACTION COMPLAINT** |
| MAXIMUS INC. | **JURY TRIAL DEMANDED** |
| *Defendant* | |

//
//


**CLASS ACTION COMPLAINT - 1**

## CLASS ACTION COMPLAINT

Plaintiffs Regis Harvey, Amanda Collins, and Andrea McDonald were "regular capacity" employees hired by Defendant Maximus, Inc. ("Maximus" or "Defendant," unless otherwise specified) and employed from approximately June 2013 up until April 25, 2014.  Plaintiffs, individually and on behalf of all other similarly situated employees, complain by their attorneys Howard Belodoff of Belodoff Law Office PLLC, and Jeremiah M. Hudson of Fisher Rainey Hudson as follows:

### I.   INTRODUCTION- NATURE OF THE ACTION

1.        All employers have an obligation to act honestly and in good faith with their employees.  This obligation requires that the employer not make misrepresentations regarding past and existing facts and to honor promises made to its employees.

2.        General Dynamics Information Technology ("GDIT") awarded Maximus a contract for the Contact Center Operations project, to interface with the public regarding Health Insurance Exchanges under the Affordable Care Act, and based upon information and belief, Maximus has multiple call centers in the United States, including one in Boise, Idaho dedicated to this specific contract.

3.        This case arises out of Defendant Maximus's systemic and unlawful treatment of Plaintiffs and hundreds, if not thousands, of similarly situated individuals employed at the Maximus call center located in Boise, Idaho.

4.        Plaintiffs in this case were employed by Defendant Maximus as Customer Service Representatives ("CSRs"), Trainers, and First-Level Supervisors.  CSRs were responsible for answering incoming calls to the center regarding the Affordable Care Act. Trainers for Maximus were tasked with reviewing and using company materials to train

incoming CSRs to answer calls relating to the Affordable Care Act.   First-Level

Supervisors were tasked with the responsibility to monitor a team of approximately 14

CSRs, which included monitoring their phone calls, reporting employee problems to higher

level managers, checking CSRs' timesheets, and coaching CSRs on customer service

issues.

5.      From around June of 2013 up until approximately January 1, 2014,

Plaintiffs were hired to staff the call center in Boise, Idaho.

6.      Plaintiffs sue on behalf of themselves and other similarly situated

employees who worked for Maximus, at the call center located in Boise, Idaho, pursuant to

Federal Rule of Civil Procedure 23.

7.      Since around June of 2013, and thereafter, Defendant has made

misrepresentations to Plaintiffs regarding the nature and length of their employment.

8.      Since around June of 2013, and thereafter, Defendant has made promises

to Plaintiffs regarding the nature and length of their employment that Plaintiffs relied upon

to their detriment.

## II.  JURISDICTION AND VENUE

9.      This Court has jurisdiction over the claims asserted in this action pursuant

to 28 U.S.C. § 1332(d)(2).

10.     Defendant is also subject to personal jurisdiction because this case arises

from Defendant's wrongful conduct in Idaho, where Maximus maintains a call center and

employs the Plaintiff class.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). A

substantial part of the events and the omissions giving rise to Plaintiffs' claims occurred in

**CLASS ACTION COMPLAINT - 3**

this district.   Additionally, Defendant is deemed to reside in this district under 1391(c) because it is subject to personal jurisdiction in the district.

12.      This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### III.  PARTIES

#### A.      The Representative Plaintiffs

13.      Plaintiff Regis Harvey ("Harvey") resides in Idaho.  Harvey has worked for Maximus in Boise, Idaho as a Trainer since July of 2013.  Harvey quit his job at Verizon, which he held for six (6) years, to work at Maximus.

14.      Plaintiff Amanda Collins ("Collins") resides in Idaho.  Collins has worked for Maximus in Boise, Idaho as a CSR since July of 2013.  Collins quit her job at ITT Technical Institute as an Instructor, which she held for more than four (4) years, to work at Maximus.

15.      Plaintiff Andrea McDonald ("McDonald") resides in Idaho.  McDonald has worked for Maximus, in Boise, Idaho as a First-Level Supervisor since July of 2013.  McDonald shut down her custom clothing and shoe company to work at Maximus.

16.      The Plaintiff class will include any similarly situated Maximus "regular capacity" employees hired from June 2013 up until January 1, 2014, at its Boise call center.

17.      "Regular capacity" employees are those individuals Maximus hired to work full-time without any defined contractual limitations.

18.      Based upon information and belief, there are approximately 1,000 similarly situated employees that are, or have been, employed by Maximus at its call center in Boise, Idaho.

**CLASS ACTION COMPLAINT - 4**

B. **Defendant Maximus**

19.        Maximus is, and at all times material hereto was, a corporation organized under the laws of the state of Virginia with its headquarters and principal place of business in Reston, Virginia.  Maximus operates call centers in various global locations including one in Boise, Idaho with a capacity of approximately 1800 employees.  Maximus has operated the Boise call center since approximately August of 2013 as part of an approximately one hundred million dollar ($100,000,000.00) contract to take calls from individuals from various parts of the United States using health insurance exchanges under the Affordable Care Act contract.

20.        The Federal government awarded GDIT the primary one hundred million dollar Affordable Care Act contract.  GDIT then awarded Maximus a thirty (30) month subcontract for the Contact Center Operations project (hereinafter the "CCO contract.")

21.         Based upon information and belief, GDIT paid Maximus the full contract price prior to June 2013.

## IV. CLASS ACTION ALLEGATIONS

22.        The Plaintiffs propose to represent a class of all persons who were hired by Maximus as "regular capacity" employees from approximately June 2013 up until January 1, 2014, and were employed at its Boise call center as CSRs, trainers, and First-Level supervisors.

23.        The proposed class consists of approximately 1,000 individuals.  Joining all of them in a single action would be impracticable because of their numbers.

24.        The Plaintiffs' claims and the defenses for fraudulent misrepresentation, negligent misrepresentation, and promissory estoppel are typical of the claims and the

**CLASS ACTION COMPLAINT - 5**

defenses of members of the proposed class because they are based upon a common set of facts.

25.     As to all of the members of the proposed class there are common issues of fact and law, including:

> A.  Whether Defendant Maximus made fraudulent misrepresentations; i.e. Maximus told Plaintiffs that: (1) Plaintiffs accepted "career" employment; and (2) Plaintiffs' employment with Maximus would last beyond the first open enrollment period and continue through the duration of the CCO contract;

> B.  Whether Defendant Maximus made negligent misrepresentations; i.e. Maximus told Plaintiffs that: (1) Plaintiffs accepted "career" employment; and (2) Plaintiffs' employment with Maximus would last beyond the first open enrollment period and continue through the duration of the CCO contract;

> C.  Whether Defendant Maximus made promises to Plaintiffs which they relied on; i.e. Plaintiffs relied on Maximus's promises that: (1) Plaintiffs accepted "career" employment; (2) Plaintiffs' employment with Maximus would last beyond the first open enrollment period and continue through the duration of the CCO contract; and (3) that the CCO contract would not be the only project Plaintiffs would service as part of their employment with Maximus.

26.     Defendant Maximus used the same job advertisements which both the Plaintiffs and proposed class saw in common.

**CLASS ACTION COMPLAINT - 6**

27.     Defendant Maximus used a standard hiring and interview process which both the Plaintiffs and proposed class experienced in common.

28.     Defendant Maximus used a generic new hire onboarding which both the Plaintiffs and proposed class attended.

29.     Defendant Maximus used generic employment documentation, including but not limited to employee offer letters, employee termination letters, and frequently asked question sheets that both Plaintiffs and the proposed class members were given.

30.     The Plaintiffs have counsel that is experienced in representing classes under F.R.C.P. 23 and in litigating cases involving misrepresentation under Idaho law.

31.     Plaintiffs' counsel has selected representative Plaintiffs who will fairly and adequately represent the claims of the proposed class.

32.     The named Plaintiffs and counsel do not have any conflicts of interest with the proposed class members and the named Plaintiffs and their counsel will prosecute this action diligently and vigorously on behalf of the class.

33.     Plaintiffs' counsel has investigated this issue since Maximus's notification of the RIF.  Plaintiffs' counsel has interviewed, conservatively, one hundred individuals who have been subject to the RIF.

34.     The questions of fact and law common to the members of the class will predominate over any issues that are unique to any Plaintiff or to any member of the proposed class.

35.     The class action is the superior method for fairly and efficiently adjudicating this case.

## V.  PLAINTIFFS' CLASS-WIDE FACTUAL ALLEGATIONS

**CLASS ACTION COMPLAINT - 7**

36.     At all relevant times, Maximus employed "regular capacity" employees at its Boise call center.

37.     "Regular capacity" employees are those individuals Maximus hired to work full-time, without any defined contractual limitations.

38.     In contrast, "limited service" employees are those individuals Maximus hired to work full-time for a contractually defined period of time.

39.     Maximus offered "regular capacity" employment to individuals hired from June 2013 up until January 1, 2014, at its Boise call center.

40.     Prior to June 2013, Maximus began advertising for employment at its Boise call center.

41.     From June 2013 up until January 2014, Maximus advertised its recruitment of up to 1800 permanent and seasonal customer service representatives and operations support staff.

42.     Beginning in July 2013 throughout January 2014, Maximus held multiple job fairs in conjunction with the Idaho Department of Labor.

43.     Maximus told Plaintiffs during their initial interviews for employment, and on multiple occasions thereafter, that "regular capacity" employees would remain employed after the first open enrollment period to service future enrollment periods through the duration of the CCO contract.

44.     Maximus also told Plaintiffs that after the CCO contract they would work on other projects for Maximus.

45.     Maximus hired "regular capacity" employees from June 2013 up until January 1, 2014, at the Boise call center under the guise of long-term employment, that

**CLASS ACTION COMPLAINT - 8**

they would be accepting "career" employment.

46.     Specifically, it was explained to employees that "[w]e believe this is an excellent career opportunity for you and that we can offer you challenges to grow professionally." *See* Harvey's Offer Letter at 1.  ***Attached hereto as Exhibit A*** is a true and correct copy of Regis Harvey's Offer Letter.  All named Plaintiffs received substantially similar offer letters.

47.     Maximus told its "regular capacity" employees that the Boise call center would service the CCO contract with GDIT, which was a 30 month contract.

48.     Maximus also told its "regular capacity" employees that it would also service other contracts, thus extending their employment beyond the Affordable Care Act enrollment period.

49.     Specifically, it was explained to employees that "[a]s you know, MAXIMUS provides services through various contracts.  Continued employment at MAXIMUS is contingent on the viability and continuation of these contracts.  The cancellation or non-renewal of these contracts may adversely impact your employment with MAXIMUS." *See* Exhibit A at 2.

50.     Upon information and belief, GDIT has not cancelled its 30 month CCO contract with Maximus.

51.     Maximus hired employees after approximately January 1, 2014, under "limited service" contracts.  "Limited service" contracts limit employment to a defined time period.

52.     Each "limited service" contract provided employees specific employment timeframes according to the employee's date of hire.

**CLASS ACTION COMPLAINT - 9**

53.     Employees hired under "limited service" contracts were given "limited service offer letters" that were used to let employees know that the job was not expected to last more than the communicated timeframe.

54.     On or about February 24, 2014, Maximus announced that in April 2014 Maximus would employ a major reduction of employees in both its Boise and Brownsville, Texas call centers.

55.     On or about February 24, 2014, Maximus told its Boise employees in a document entitled "Frequently Asked Questions ("FAQ") CCO Reduction in Force" (hereinafter "RIF FAQ"), that the reduction in force ("RIF") in both Brownsville and Boise were due to the significant reduction in call volumes. *See* RIF FAQ at 1. **Attached hereto as Exhibit B** is a true and correct copy of the RIF FAQ.  All named Plaintiffs received the same RIF FAQ.

56.     On or about February 24, 2014, in the same RIF FAQ, and contrary to what the RIF FAQ states in the opening paragraph on page 1, Maximus also told its Boise employees that the RIF was pre-determined during the project planning phase, which was before Plaintiffs' hiring in approximately June of 2013.

57.     Specifically, the RIF FAQ states "[t]his RIF is based on the expected reduction in volume from our client on the ACA enrollment contract.  The reduction in staff was determined during the project planning phase and coincides with ACA enrollment call volume, prior to the [FLSA] lawsuit."  Exhibit B at 4, ¶ 21.

58.     Maximus told its Boise employees to expect the RIF to occur on or around April 25, 2014.

59.     On or about February 24, 2014, Maximus held meetings in Boise to

**CLASS ACTION COMPLAINT - 10**

discuss the RIF with employees.

60.　　　On or about February 24, 2014, as part of the RIF FAQ sheet, Maximus told its Boise employees that they were not told about the potential reduction in force when they were hired because:

> As we've seen first-hand, call volumes have been higher than expected and somewhat unpredictable.  While we expected a reduced volume of calls after the peak season, we were uncertain what direction would come from our client in terms of timing and required staffing.  We worked closely with our client throughout the contract to determine the exact numbers needed in order to communicate accurate information to our employees in as timely a manner as possible.
>
> Exhibit B at 1, ¶ 4.

61.　　　On or about February 24, 2014, Maximus told its Boise employees that Maximus will be hiring/rehiring all employees in the fall of 2014 in a "limited service" capacity.

62.　　　On or about March 20, 2014, Maximus began distributing termination letters to employees subject to the RIF, announcing their termination to be effective April 25, 2014.

63.　　　In its March 2014 termination letters to Plaintiffs, Maximus admits that without the service of its employees, "the CCO project's support of the initial ACA enrollment period would not have been possible."  *See* Harvey's Termination Letter.  ***Attached hereto as Exhibit C*** is a true and correct copy of Regis Harvey's Termination Letter.  All named Plaintiffs received substantially the same termination letters.

64.　　　From the opening date of the Boise facility through at least January 2014, Maximus continued to hire CSRs, Trainers, and First-Level Supervisors on a "regular

**CLASS ACTION COMPLAINT - 11**

capacity" and a "limited capacity" basis.

65.     Plaintiffs were terminated on April 25, 2014.

## VI. FIRST CLAIM FOR RELIEF
## FRAUDULENT MISREPRESENTATION

66.     Plaintiffs allege and incorporate by reference the preceding paragraphs of this complaint as if fully alleged herein.

67.     Defendant made an untrue representation or statement of past or existing material fact; i.e. Maximus told Plaintiffs that: (1) Plaintiffs accepted "career" employment; and (2) Plaintiffs' employment with Maximus would last beyond the first open enrollment period and continue through the duration of the CCO contract.

68.     Defendant knew that its representations were false; i.e. prior to Plaintiffs' hiring in June 2013, Maximus determined in its project planning phase a RIF would occur at its Boise call center.

69.     Defendant intended for Plaintiffs to act on its untrue representation; i.e. Maximus intended for Plaintiffs to quit their previous employment and/or stop actively seeking employment other than Maximus so that Maximus could sufficiently staff the Boise call center and meet its obligations to GDIT under the CCO contract.

70.     Plaintiffs had no knowledge of the falsity of the representations made by Defendant; i.e., based upon information and belief, Maximus did not tell any trainer, first-level supervisor, or CSR about the RIF until February 24, 2014.

71.     Plaintiffs had a right to rely upon the representations made by Maximus.

72.     Plaintiffs suffered damages as a result of Defendant's untrue representations in an amount to be determined at trial; i.e. Plaintiffs left viable employment

**CLASS ACTION COMPLAINT - 12**

for a career opportunity at Maximus, and/or Plaintiffs selected the career employment opportunity at Maximus over other available career opportunities.  Further, Plaintiffs are no longer employed by Maximus as they were subject to the RIF.

73.         Plaintiffs have been required to retain counsel to pursue a claim against Defendant.

## VII. SECOND CLAIM FOR RELIEF
## NEGLIGENT MISREPRESENTATION

74.         Plaintiffs allege and incorporate by reference the preceding paragraphs of this complaint as if fully alleged herein.

75.         Defendant made an untrue representation or statement of past or existing material fact; i.e. Maximus told Plaintiffs that: (1) Plaintiffs accepted "career" employment; and (2) Plaintiffs' employment with Maximus would last beyond the first open enrollment period and continue through the duration of the CCO contract.

76.         Defendant was ignorant of the representation or statement's falsity, or had an insufficient basis for asserting that the representation was true.

77.         Defendant intended for Plaintiffs to act on its untrue representation; i.e. Maximus intended for Plaintiffs to quit their previous employment and/or stop actively seeking employment other than Maximus so that Maximus could sufficiently staff the Boise call center and meet its obligations to GDIT under the CCO contract.

78.         Plaintiffs had no knowledge of the falsity of the representations made by Defendant; i.e., based upon information and belief, Maximus did not tell any trainer, first-level supervisor, or CSR about the RIF until February 24, 2014.

79.         Plaintiffs had a right to rely upon the representations made by Defendant.

**CLASS ACTION COMPLAINT - 13**

80.      Plaintiffs suffered damages as a result of Defendant's untrue representations, in an amount to be determined at trial; i.e. Plaintiffs left viable employment for a career opportunity at Maximus, and/or Plaintiffs selected the career employment opportunity at Maximus over other available career opportunities.  Further, Plaintiffs are no longer employed by Maximus as they were subject to the RIF.

81.      Plaintiffs have been required to retain counsel to pursue a claim against Defendant.

## VIII. THIRD CLAIM FOR RELIEF
## PROMISSORY ESTOPPEL

82.      Plaintiffs allege and incorporate by reference the preceding paragraphs of this complaint as if fully alleged herein.

83.      Plaintiffs relied on Defendant's promises; i.e. Plaintiffs relied on Maximus's promises that: (1) Plaintiffs accepted "career" employment; (2) Plaintiffs' employment with Maximus would last beyond the first open enrollment period and continue through the duration of the CCO contract; and (3) that the CCO contract likely would not be the only project Plaintiffs would service as part of their employment with Maximus.

84.      Plaintiffs' detriment suffered in reliance was substantial in an economic sense; i.e. Plaintiffs left viable employment for a career opportunity at Maximus, and/or Plaintiffs selected the career employment opportunity at Maximus over other available career opportunities.  Further, Plaintiffs are no longer employed by Maximus as they were subject to the RIF.  Additionally, because of their participation in this lawsuit, Plaintiffs did not receive severance compensation.

**CLASS ACTION COMPLAINT - 14**

85.     Plaintiffs' detriment was, or should have been, foreseeable by Defendant; i.e. Maximus knew, or should have known, that by taking employment with Maximus, Plaintiffs forewent other employment opportunities.  Maximus knew that by conducting the RIF Plaintiffs would be unemployed.

86.     Plaintiffs acted reasonably in justifiable reliance on the promises Defendant made; i.e. Maximus made the same promises to all Plaintiffs.  Each of the Plaintiffs believed Maximus, and accepted Maximus's offers of employment foregoing other opportunities.  Plaintiffs' reliance was reasonable.

87.     As a result of Defendant's false promises, Plaintiffs have sustained damages in an amount to be determined at trial, in excess of $80,000.00.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, individually and on behalf of all other similarly-situated persons, pray for the following relief:

A.  That the Court determine that this action may be maintained as a class action under the Federal Rules of Civil Procedure Rule 23(a) and (b)(3);

B.  That, at the earliest possible time, Plaintiffs be allowed to give notice of this class action, or that the Court issue such notice, to all persons who are presently, or have been at any time during the year immediately preceding the filing of this suit, up through and including the date of the Court's issuance of Court-supervised Notice, been employed by Maximus at its Boise call center. Such persons shall be informed that this civil action has been filed, of the nature of the action, and of their right to opt out of this lawsuit;

**CLASS ACTION COMPLAINT - 15**

C.  That the Court find that Maximus's misrepresentations have been intentional, or in the alternative negligent;

D.  That the Court award to Plaintiffs and the Plaintiff Class compensatory and punitive damages in excess of $80,000.00, in an amount to be determined at trial;

E.  That Plaintiffs be awarded reasonable attorney's fees and costs pursuant to Rule 23(h); and

F.  That the Court award such other and further relief as this Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Respectfully submitted this 25th day of April, 2014.


_____/s/_____
Howard A. Belodoff, ISB No. 2290
BELODOFF LAW OFFICE PLLC
1004 West Fort Street
Boise, ID 83702
Telephone: (208) 331-3378
Facsimile: (208) 947-0014
Email: hbelodoff@hotmail.com


_____/s/_____
Jeremiah M. Hudson, ISB No. 8364
FISHER RAINEY HUDSON
910 West Main Street, Suite 254
Boise, ID 83702
Telephone: (208) 345-7000
Facsimile: (208) 297-2689
Email: jeremiah@frhtriallawyers.com


**CLASS ACTION COMPLAINT - 16**

*Attorneys for Plaintiffs and
Proposed Class*

# Exhibit A



**MAXIMUS**

*HELPING GOVERNMENT SERVE THE PEOPLE®*

June 6, 2013

Mr. Regis P Harvey
12238 W Palm Ct
Boise, ID 83713

Dear Mr. Harvey:

MAXIMUS is pleased to extend an offer of full-time employment to you as the Specialist -
Training in our Boise, ID office. We would like you to start on July 8, 2013. We believe this is
an excellent career opportunity for you and that we can offer you challenges to grow
professionally. The details of the offer are set forth below:

### Compensation

Your annual base compensation will be $42,500.00, paid semi-monthly at a rate of $1,770.83.
Your compensation in succeeding years will be considered for adjustment as part of our normal
performance review process.

### Employee Benefits

For details about our employee benefits, please visit our benefits website
www.maximusbenefits.com and refer to the column "Benefits Information". You will be eligible
to participate, according to the terms of the respective plans, in the following fringe benefits:

- Based on your job title, you will receive 15 days of Paid Time Off (PTO). However, if
  you are rejoining the MAXIMUS team, you may receive additional PTO days
- Paid holidays as stated in the Corporate Employee Manual
- Employer subsidized health, dental, life and short/long term disability insurance
- Participation in the MAXIMUS 401k plan which includes matching corporate
  contributions and
- Other benefits as described in our Corporate Employee Manual

Please note that all benefits are subject to change.

### Contingency Matters

This offer and your continued employment are contingent upon the following:

- Return of the signed Offer Letter
- Acceptance of the Confidentiality and Non-Competition Agreement as part of your
  eOnboarding process that includes provisions pertaining to restrictions on confidential

Mr. Regis P Harvey 1 of 4

information and competition
- Complete and truthful information as represented within your employment application, resume, and any other documentation provided by you
- Satisfactory results of any background investigations and reference checks that MAXIMUS may conduct
- Verification of your legal right to work in the United States
- Verification of your ability to work for MAXIMUS without restriction, meaning you do not have non-competition obligations or other restrictive covenants with your current or former employer;  or any non-competition or other restrictions disclosed by you have been resolved to MAXIMUS' satisfaction

As a condition of employment, MAXIMUS employees are required to complete the Corporate Compliance Training (CCT) requirements within five (5) working days from their hire date. These CCT requirements should be completed as a priority to project or job-specific training (See Employee Manual).  It is essential that you comply with the training requirements within the specified period of time.  MAXIMUS will make the dates and other details of this training available to you within your first week of employment.  Employees who do not comply with this requirement may be subject to disciplinary action up to and including termination.

As you know, MAXIMUS provides services through various contracts.   Continued employment at MAXIMUS is contingent on the viability and continuation of these contracts.   The cancellation or non-renewal of these contracts may adversely impact your employment with MAXIMUS.

**Employment At-Will**

Employment at MAXIMUS is on an at-will basis.  This means that you or MAXIMUS may terminate the employment relationship at any time, with or without cause and with or without notice.  This letter is not a contract of employment and nothing in this letter is intended to alter or in any way change the at-will nature of your employment with MAXIMUS.  You may terminate your employment with MAXIMUS at any time.  Likewise, MAXIMUS may terminate your employment at any time.

**Job Description**

A copy of the job description for your position is available upon request from your Human Resources Representative.  Please contact Whitney D Whiddon to obtain a copy.  Any and all concerns about your job description should be discussed with your manager immediately.

**Orientation**

We would like you to start employment with MAXIMUS on July 8, 2013 by reporting to the Boise, ID office, located at 219 West Main St, to attend a new hire Orientation Session at 10:00 AM.  Please ask for Jin Young Zaleski at the reception desk.

Prior to the Orientation Session, you will receive an email from MAXIMUS welcoming you to

Mr. Regis P Harvey 2 of 4

the organization. This email will contain a link that will route you to our eOnboarding System for New Hire Information. You will be asked to confirm information previously supplied to MAXIMUS and will be asked to provide additional information. Please complete this process within 48 hours of receipt of the MAXIMUS email.

## Employment Eligibility

The law requires that we verify the identity and employment eligibility of everyone hired and that we complete and retain a Form I-9. On your first day of employment, please bring the appropriate document(s) as described in the List of Acceptable Documents attached to this letter. You may call the I-9 Hotline at (866) 254-5094 extension 171 if you have questions.

You will be required to complete a federal tax form (and any applicable state and local tax forms) on or prior to your first day of employment. If a tax form is not completed, MAXIMUS will default your withholding to the highest tax rate for your income bracket.

We hope you choose to accept our offer. If you do, please sign, date and return this original letter via email or fax to the Human Capital Resolution Center (HCRC). The HCRC's email address is hcrc@maximus.com and their fax number is 703-689-3272. By signing this letter, you also represent that you are not subject to any non-competition agreement or similar agreement that would in any way restrict you from performing services on behalf of MAXIMUS and its clients.

Please call Jin Young Zaleski at (512) 533-5000, if you require additional information with regard to our company, your position or the content of this letter.

Our corporate philosophy is: 'Quality, Profitability, and Growth'; these attributes rely on the skills and commitment levels of our staff. We have every confidence in your ability to contribute to our company and look forward to you being part of the MAXIMUS Team.


Sincerely yours,



Accepted By:_____Date:_____




Mr. Regis P Harvey 3 of 4

**ENCLOSURES:**

Confidentiality and Non-Competition Agreement (For your review only at this time)
I-9 List of Acceptable Documents
Pay Schedule
Virtual Orientation Schedule (if applicable)
Tax Credit Forms

# Exhibit B



# Frequently Asked Questions (FAQs)
## CCO Reduction in Force

Disclaimer: This information is intended for general reference. Any conflict between this information and the terms of any official notification will be resolved in favor of the official notification.

*MAXIMUS has sent out a memo regarding the nature of our business as it impacts our work on the Customer Contact Center Operations (CCO) project. Our work ebb and flow according to the Affordable Care Act (ACA) enrollment periods. As noted in the memo, MAXIMUS expects a major reduction of employees in both the Brownsville and Boise call centers in April. These two reductions in employment are due to the significant reduction in call volume. We understand that, with this type of news, you may have a number of questions. The information below was created to address some of the common questions that may arise as a result of the reduction in force.*

## Communication of Reduction in Force (RIF)

*1. When is the date of the reduction in force (RIF)?* We currently anticipate the reduction in force to occur on or around **April 25th**.

*2. How is MAXIMUS communicating this information to project employees?* On February 24, 2014, meetings are being held at both facilities. During those meetings, official notices will be distributed to employees. In addition, to ensure receipt by all of those potentially affected by the reduction in force, we are sending an additional copy of this notice via First Class mail to the home addresses of project employees on February 24th. All employees will receive this communication, not just employees impacted by the reduction in force.

*3. How do I know if I am one of the impacted employees?* A separate notice will be shared with those individuals being impacted on or before April 25th. This will come in the form of an official Reduction in Force (RIF) letter and other relevant documents.

*4. Why wasn't I told about the potential reduction in force when I was hired?* As we've seen first-hand, call volumes have been higher than expected and somewhat unpredictable. While we expected a reduced volume of calls after the peak season, we were uncertain what direction would come from our client in terms of timing and required staffing. We worked closely with our client throughout the contract to determine the exact numbers needed in order to communicate accurate information to our employees in as timely a manner as possible.

2/24/2014

*5. Who can I speak to if I have further questions?* Please continue to reference this FAQ document. If you have additional questions, please direct them to your Supervisor, Operations, Manager, or a member of the CCO Project Human Capital Team.

## Process to select employees for the Reduction in Force

*6. What method is being used to select the employees who will be impacted?* The methodology used to select individuals includes considerations such as: (1) Date of Hire and (2) Disciplinary Actions (such as Formal, Verbal, or Written Warnings, etc.) on file. Project Management felt this was the most appropriate and fairest approach for a selection process.

*7. I received a Limited Service offer letter when I was hired, what does that mean?* The Limited Service offer letter was used to let you know that the job was not expected to last more than the communicated timeframe. Each offer letter included a different timeframe according to the date of hire. Generally, employees who received Limited Service offers were those hired on or after January 1, 2014.

*8. How is MAXIMUS addressing the Limited Service employees?* Those employees who received a Limited Service offer letter will be selected first for the RIF. As mentioned in item 6, the employment timeframe was communicated at the time of employment and New Hire Orientation.

*9. What if I did not receive a Limited Service offer letter?* We are currently conducting a review of regular employees, and categorizing them, as described in item 6, as part of the RIF selection process.

## Benefits

*10. What happens to my benefits if I am impacted by the RIF?* Employees selected as part of the RIF will have the ability to elect COBRA coverage at their own expense if they wish to continue their benefits and healthcare coverage. COBRA generally allows you to continue benefits for up to 18 months after your date of separation. Please refer to the COBRA packet that will be sent to all employees impacted by the RIF shortly after their termination dates for more information.

*11. What happens if I am currently on Short Term Disability at the time of the RIF?* If you are on Short Term Disability at the time of the RIF and are separated, you will continue to receive benefits under the program as long as you are eligible due to the disability, subject to the limitations in the plan.

*12. What happens to my 401k retirement account?* Employees may keep their 401(k) balances in the MAXIMUS plan. Balances may remain invested in their respective funds. Please contact Fidelity if you have any questions about your 401k at 1-800-890-4015 or log on to Fidelity NetBenefits at www.401k.com

*13. Can I request a 401k distribution?* Yes, you can request a distribution from your 401(k) account, although we strongly advise you to consult with Fidelity, your financial advisor, or other financial professional before doing so. In addition to being subject to income taxes,

401(k) withdrawals may be subject to penalties if requested prior to age 591/2 payouts. If you have additional questions about the tax treatment, penalties or other issues, you may contact Fidelity at 1-800-890-4015 or log on to Fidelity NetBenefits at www.401k.com

## Severance

*14. Will I be eligible for severance pay as part of my reduction?* In accordance with company policy, employees identified as Limited Service employees will not be eligible for severance pay. Those employees hired into a regular position (not a Limited Service capacity) prior to January 1, 2014 are eligible for severance pay, upon execution of a Separation Agreement and general release of claims.

*15. What is the MAXIMUS severance policy?* According to the MAXIMUS severance policy, the general standard for severance pay is that eligible regular full-time employees receive one week of pay for every full year of service with a minimum of two weeks at the employee's current pay rate, whichever is greater. Employees are required to sign a Separation Agreement in order to receive the severance payout. Please refer to the Employee Manual for additional details.

*16. If I am laid off, rehired in the Fall of 2014, then laid off again, may I receive severance again?* MAXIMUS will be hiring/rehiring all employees in the Fall of 2014 in a Limited Service capacity. If laid off thereafter, those employees will not receive severance in accordance with MAXIMUS policy.

## Final Pay

*17. When can I expect my final pay for final hours worked?* Employees impacted will receive their final pay in accordance with state law.

> Texas: Requires an employee is paid in the next pay cycle, and if involuntary, paid within 6 days of their termination date.

> Idaho: Requires an employee is paid in the next pay cycle, and if involuntary, paid within the next pay cycle or within 48 hours should the employee request payment in writing within that time frame.

*18. What happens to the Paid Time Off that I have accrued, but not used?* Any accrued and unused PTO will be paid out with your final pay.

## Other Opportunities with MAXIMUS

*19. What happens in the Fall of 2014 when the second ACA enrollment period begins?* We hope everyone will want to return when our business needs require staffing increases in the future! We recommend that you keep your contact information up-to-date with us so we may contact you easily.

2/24/2014

**20. Will I be allowed to transfer to another site or project if I choose to?**  MAXIMUS welcomes transfers within projects and considers employees for new opportunities based on skills, experience and past performance. You may be allowed to seek other opportunities within the company.   MAXIMUS opportunities are listed on the company's website – www.maximus.com

**Current Litigation Impact**

**21. Are these RIFs a result of the current lawsuit MAXIMUS is a part of?**  No.  The RIF is a separate issue.  This RIF is based on the expected reduction in volume from our client on the ACA enrollment contract.  The reduction in staff was determined during the project planning phase and coincides with ACA enrollment call volume, prior to the lawsuit.

2/24/2014

# Exhibit C

## SEPARATION AGREEMENT AND RELEASE

This Separation Agreement ("Agreement") is made between MAXIMUS, Inc. ("MAXIMUS") and ___Regis Harvey____ ("Employee").  Employee was provided a copy of this Agreement on April 18, 2014 (the "Notice Date").

WHEREAS, Employee has been employed by MAXIMUS at all times on an at-will basis; and

WHEREAS, MAXIMUS has determined to lay off Employee as part of a group termination and has further determined that Employee is eligible for severance pay if Employee works through April 25, 2014 (the "Termination Date"); and

WHEREAS, the execution of a release in a form approved by MAXIMUS is necessary for Employee to receive severance pay benefits; and

WHEREAS, Employee and MAXIMUS desire to enter into this Agreement regarding the terms and conditions of the termination of Employee's employment with MAXIMUS;

NOW THEREFORE, Employee and MAXIMUS enter into this Agreement and agree to the following terms and conditions in consideration of the promises contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged:

1.      Termination of Employment.  (a)  Employee's employment with MAXIMUS will terminate on the Termination Date.

(b)      MAXIMUS will pay all final wages due plus any unused Paid Time Off (PTO) to Employee accrued through the Termination Date in accordance with the earlier of MAXIMUS standard payroll practices or state law.

(c)      Employee's participation, if any, in all MAXIMUS benefit plans shall cease as of the Termination Date, except that it is expressly recognized that Employee shall retain all vested rights, if any, under such plans and any amounts payable to Employee under such plans shall be paid pursuant to the respective terms of such plans.  All health insurance benefits, if any, cease on the last day of the month in which employee is terminated.  All life and disability insurance benefits, if any, cease as of the last day of employment.  There shall be no other benefits paid out unless set forth in this Agreement.

(d)      Employee agrees to return all MAXIMUS property including, if applicable, all documents belonging to MAXIMUS on the Termination Date.  Employee further agrees not to retain any copies of any documents, computer hardware and/or software.  Company property shall include but not be limited to laptops, keys, pagers, telephone cards, credit cards and any and all other property disseminated by MAXIMUS during the employee's course and scope of employment.  Severance pay shall be contingent upon MAXIMUS receiving all company property.  Employee shall submit final expense reports, if any, by the Termination Date.

2.      Consideration.  Contingent on Employee (a) Employee working at MAXIMUS through the Termination Date; (b) executing this Agreement on or after the Termination Date and within the Consideration Period referred to in Paragraph 5(e) below, (c) expiration of the Revocation Period referred to in Paragraph 5(f) below, and (d) return by Employee of all Company property and information as required by Paragraph 1(d) above (collectively, the "Payment Terms"), MAXIMUS shall pay Employee a lump sum severance amount equal to two (2) weeks pay at Employee's final base rate, the gross amount of which has been calculated to be $__$1,468.80_____, which both MAXIMUS and Employee agree is a correct amount.  Such amount is subject

to withholding for state and federal taxes, FICA and Medicare, but no 401(k) deferral will be deducted from such amount.

3.   <u>No Further Compensation or Benefits</u>.  Employee acknowledges that the payments and arrangements described in paragraphs 1 and 2 above shall constitute full and complete satisfaction of any and all compensation and benefit amounts properly due and owing to Employee as a result of employee's employment with MAXIMUS and the termination of that employment, and that the amount described under paragraph 2 above represents consideration greater than that to which Employee would be entitled upon termination of employment in the absence of this Agreement.

4.   <u>General Release and Waivers</u>.  (a)   In consideration of the payments and arrangements set forth above, Employee releases MAXIMUS and its affiliated entities and their officers, directors, partners, owners, employees, contractors, clients, agents, representatives, predecessors, successors and assigns (the "Releasees") from any and all individual or class action claims, actions, rights, demands, debts, damages, grievances or accountings of whatever nature, whether known or unknown, currently existing or arising in the future, relating in any way to Employee's employment with MAXIMUS or the termination thereof, including, without limitation, claims under the Age Discrimination in Employment Act, Older Workers Benefit Protection Act, Title VII of the Civil Rights Act of 1964, Worker Adjustment and Retraining Notification Act,  Family and Medical Leave Act, Americans with Disabilities Act, Fair Credit Reporting Act, Sarbanes-Oxley Act, Immigration Reform and Control Act, Occupational Safety and Health Act, National Labor Relations Act, and all other federal, state or local laws or any other statute, rule, regulation or executive order precluding discrimination or retaliation in employment, claims for breach of contract, wrongful discharge, personal injuries or torts, defamation, common law or statutory whistleblower claims, and all claims whether known or unknown, arising through the date of execution of this Agreement by Employee, excepting only those matters set forth in this Agreement.

(b) Excluded from this release and covenant not to sue are: (i) any claim or right which cannot be waived by law, including without limitation, all claims arising after the date of this Agreement, claims for unemployment compensation, and claims for worker compensation benefits; (ii) claims under the Fair Labor Standards Act, including without limitation, any claims under *Norton, et al. v. Maximus Inc.*, Case No.  1:14-cv-00030-BLW , in the United States District Court for Idaho; and (iii) the right to file a charge with or participate in an investigation conducted by an administrative agency, provided Employee is waiving, however, any right to any monetary recovery if any administrative agency pursues any claim or claims on Employee's behalf.

(c)     Employee may apply for re-employment with MAXIMUS, which is an equal employment opportunity employer.  However, there is no guarantee Employee will be re-hired.  MAXIMUS reserves the right to hire or re-hire persons it believes are the best qualified applicants for any future openings.

(d)     This Agreement does not bar actions or proceedings instituted for the sole purpose of enforcing the provisions of this Agreement.

(e)     If Employee has executed a Confidentiality and Restrictive Covenant Agreement with MAXIMUS ("Confidentiality Agreement"), then that Confidentiality Agreement survives the termination of Employee's employment with Maximus and Employee shall comply with the terms of that Confidentiality Agreement.  Likewise, any client non-disclosure agreement signed by Employee survives the termination of Employee's employment with MAXIMUS and Employee shall comply with the terms of that agreement.

5.   <u>Older Worker Benefit Protection Act</u>.  In compliance with the Older Worker Benefit Protection Act ("OWBPA") and in providing a release of all claims under the Age Discrimination in Employment Act ("ADEA"), Employee agrees and acknowledges as follows:

(a)     Employee has read the terms of this Agreement, understands its contents, and agrees to the terms and conditions set forth in this Agreement of Employee's own free will.

(b)     Employee has been advised by this document, in writing of Employee's right to consult with legal counsel prior to executing this Agreement.

(c)     Employee does not rely on any statement or representation of MAXIMUS outside of this Agreement in entering into this Agreement.

(d)     Employee is not releasing rights or claims under the ADEA that arise after the date this Agreement is executed.

(e)     Employee shall have forty-five (45) calendar days from the Notice Date (the "Consideration Period") within which to consider the terms and execute this Agreement.  (Employee may consider, execute and provide this Agreement to MAXIMUS sooner, so long as Employee signs the Agreement on or after the Termination Date; however, if Employee chooses, Employee may take all 45 days if Employee desires.)

(f)     Employee acknowledges and understands that Employee may rescind this Agreement within seven (7) calendar days of the date on which Employee executes this document (the "Revocation Period").  Should Employee wish to exercise the right to rescind this Agreement, the rescission must be in writing and must be delivered by hand or mail to Norman O. R. Iracheta, Director - Human Capital, Federal Services Division within the Revocation Period. If Employee wishes to deliver the rescission by mail, the rescission must be postmarked within the Revocation Period; must be sent by certified mail, return receipt requested; and must be properly addressed as follows:

> MAXIMUS, Inc.
> Norman O. R. Iracheta
> Director - Human Capital
> Federal Services Division
> 4335 Paredes Line Rd.
> Brownsville, TX 78526

If Employee wishes to deliver the rescission by hand, the rescission shall be delivered to the person and address stated above within the Revocation Period.

(h)     The consideration referred to in paragraph 2 will not be paid until the Revocation Period has expired without Employee exercising Employee's right of revocation and all other Payment Terms are fulfilled.  If Employee fails to sign and return this Agreement by the end of the Consideration Period or if employee timely exercises the right to revoke pursuant to subparagraph 5(f), the offers and promises made in this Agreement are null and void and Employee shall return to the Company any consideration Employee received.

(i)     Attached to this Agreement is information complying with the OWBPA regarding individuals covered by the severance program in which Employee is participating, eligibility factors for such program, time limits applicable to such program, job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

6.     Employee acknowledges and agrees that the payments and arrangements made pursuant to this Agreement shall not be construed or interpreted as an admission of any liability on the part of MAXIMUS.

7.      Employee agrees that if Employee is subpoenaed relating to any litigation matters involving MAXIMUS that Employee will notify MAXIMUS's General Counsel, or his/her designee within forty-eight (48) hours.  MAXIMUS will not compensate Employee for testifying as a fact witness, but may reimburse Employee's reasonable expenses for travel and accommodation incurred at the request of, and booked through, MAXIMUS.  Nothing in this Agreement prevents either Party from cooperating with any law enforcement or administrative agency, participating in an investigation or legal proceeding of an administrative agency, or testifying truthfully under oath as required by applicable laws.

8.      The Parties agree that neither Party shall make any negative or disparaging remarks respecting the other Party.  Upon specific request, MAXIMUS shall verify Employee's position, compensation level and dates of employment.  Nothing in this Agreement prevents either Party from cooperating with any law enforcement or administrative agency, participating in an investigation or legal proceeding of an administrative agency, or testifying truthfully under oath as required by applicable laws.

9.      Employee agrees to keep the terms, amount and fact of this Agreement confidential, and Employee will not hereafter disclose any information concerning this Agreement and communications with MAXIMUS concerning it before, during or after its execution to any third party, including, but not limited to, any past or present employee of MAXIMUS, except as may be required by law.  Employee may, however, disclose this Agreement in connection with Employee's tax returns and to an attorney, tax advisor and to an immediately family member, provided Employee expressly advises them of the obligation to keep the Agreement confidential.  Unless requested by MAXIMUS or required by court order, Employee agrees not to discuss any MAXIMUS project, Employee's role in or at that project, or any other aspect of MAXIMUS's business with any current or former employees of MAXIMUS or any other third party.  This paragraph does not prevent or apply to any action by Employee to challenge the validity of Employee's release of claims under the Age Discrimination in Employment Act.

10.     This Agreement sets forth the Parties' entire agreement and supersedes any and all prior written or oral agreements or understandings between them pertaining to the subject matter of this Agreement.

11.     Should any provision of this Agreement be determined by any court to be illegal or invalid, the validity of the remaining terms shall not be affected thereby, and the illegal or invalid term shall be deemed not to be part of this Agreement.

12.     This Agreement shall be construed in accordance with Idaho law, without regard to any jurisdiction's principles of conflict of laws.  In any action brought to enforce this Agreement, the substantially prevailing party shall be entitled to recover reasonable legal fees and costs, and the action shall be tried to a court without a jury.

13.     This Agreement shall inure to the benefit of and be binding on the successors, heirs and assigns of the Parties.

14.     This Agreement may only be amended by a written document signed by both of Parties hereto.

15.     A photocopy, facsimile or emailed copy of this Agreement shall be as effective as an original. An electronic signature shall be as effective as an original.

Employee Name: Harvey, Regis
Employee Number: 58495

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the dates set forth below.

Employee's Signature

_____

Date_____

MAXIMUS, Inc.

By: _____

Mark S. Andrekovich, Chief Human Capital Officer

Date_____

**Return signed copy by no later than June 2, 2014 to your Project HC Representative via mail, fax or in person.**

5