B. Newal Squyres (ISB #1621)
Pamela S. Howland (ISB #6177)
Ted C. Murdock (ISB #5431)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
Post Office Box 2527
Boise, Idaho  83701-2527
Telephone:  (208) 342-5000
Facsimile:   (208) 343-8869
nsquyres@hollandhart.com
phowland@hollandhart.com
tmurdock@hollandhart.com

Attorneys for Defendant MAXIMUS Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REGIS HARVEY, AMANDA COLLINS, ANDREA MCDONALD, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br>v.<br><br>MAXIMUS INC.,<br><br>                              Defendant. | Case No.  1:14-cv-00161-BLW<br><br>**REPLY MEMORANDUM IN SUPPORT OF MAXIMUS INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT (Dkt. 5)** |

**I.      INTRODUCTION**

MAXIMUS moved to dismiss each of the three claims for relief alleged in Plaintiffs' First Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Dkt. 5. Plaintiffs concede they have failed to state a claim for negligent misrepresentation.  As to the remaining two counts—one for fraudulent misrepresentation and one for promissory estoppel— Plaintiffs' Response fails to remedy (or in most instances even address) the numerous shortcomings in Plaintiffs' Amended Complaint identified by MAXIMUS in its opening brief. Dkt. 10.

Plaintiffs' First Amended Complaint is fundamentally defective because it completely ignores the requirements of Rule 9(b) and lacks the required factual specificity to provide

**REPLY MEMORANDUM IN SUPPORT OF MAXIMUS INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT (Dkt. 5)** - 1

MAXIMUS with notice of the facts upon which it is based.  Moreover, Plaintiffs' continuing inability to articulate specific facts that establish compliance with each of the nine elements of fraud illustrates why dismissal of the fraudulent misrepresentation claim is proper.  Finally, Plaintiffs have provided no explanation as to how their promissory estoppel claim is viable in light of Idaho law that clearly prohibits the use of this claim to re-write the terms of a contract solidified by adequate consideration.  For these reasons, as well as those set forth below and in MAXIMUS's opening brief, MAXIMUS requests that the court dismiss Plaintiffs' Amended Complaint.

## II.   PLAINTIFFS CONTINUE TO IGNORE RULE 9(B) AND, BY DOING SO, FAIL TO PROVIDE MAXIMUS WITH THE REQUIRED NOTICE.

Plaintiffs attempt to circumvent Rule 9(b) by arguing that they are excused from its particularity requirements based on *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007), a case factually distinguishable from that at issue here.  Contrary to Plaintiffs' arguments, *Odom* is inapposite and MAXIMUS is entitled to factual allegations explaining the who, what, when, where, and how of the misconduct charged against it.  This is especially true in light of the fact that Plaintiffs' fraud claim has become a moving target, with Plaintiffs raising new and unpled fraud theories in their response.  Rule 9(b) protects MAXIMUS from having to guess or speculate about fraud claims, particularly where the Plaintiffs themselves do not have a clear idea of the alleged fraudulent conduct on which their claim is based.

### A.   CONTRARY TO PLAINTIFFS' RESPONSE, *ODOM* DOES NOT NEGATE RULE 9(b).

Plaintiffs incorrectly argue that Rule 9(b)'s particularity requirements are relaxed under *Odom*, a case alleging consumer wire fraud at a retail store that is easily distinguishable from the this case.  In that case, Defendants moved to dismiss under Rule 9(b) because plaintiff failed to identify by name the store employee who processed the transaction.  The *Odom* Court concluded that plaintiff was not required to identify the employee by name.  "In the circumstances of a retail transaction whose full consequences are realized only months later, the employee of the

store need not be named." *Id.* at 554.  The Court held that under these specific facts plaintiffs' allegations of wire fraud were sufficiently particularized to satisfy Rule 9(b).  *Id.* at 555.

Courts interpreting the *Odom* decision have limited its holding to the particular facts of the case.  *See Ha v. Bank of America*, No. 5:14-00120, 2014 WL 3616133, at *8 (N.D. Cal., July 22, 2014) (court declined to extend the application of *Odom* beyond its facts); *Rosenburg v. Bank of America*, No. 11-10597, 2013 WL 1191436, at *4 (C.D. Cal., March 21, 2013) (*Odom* not applicable because plaintiffs' complaint fails to provide enough information to adequately identify the circumstances constituting fraud); *Goodwin v. Executive Trustee Servs., LLC*, No. 09-306, 2010 WL 5056192, at *3 (D. Nev., Dec. 2, 2010) (holding in *Odom* limited because "this case does not involve a routine retail transaction like the kind at issue in *Odom*").  Plaintiffs' fraud claim, unlike the one in *Odom*, is not premised on a chance encounter during a routine retail transaction.  This Court should follow the clear precedent in limiting *Odom* to its narrow factual holding.

> B. **PLAINTIFFS' NOVEL FRAUD THEORY—RAISED FOR THE FIRST TIME IN THEIR RESPONSE—HIGHLIGHTS WHY MAXIMUS IS ENTITLED TO RULE 9(B) NOTICE.**

Unlike Plaintiffs' Amended Complaint which alleges that MAXIMUS misrepresented the "nature and length of their employment," *see*, Dkt. 3, ¶¶7, 8, 25, 45, Plaintiffs' response alleges, for the first time, that MAXIMUS promised them an "opportunity" for career employment.  *See*, Dkt. 10 at 5 (representations that Plaintiffs would be accepting an <u>opportunity</u> for career employment); *Id.* at 6-7 (Plaintiffs allege that MAXIMUS represented that they had the <u>opportunity</u> for career employment); *Id.* at 9 (Maximus promised Plaintiffs the <u>opportunity</u> for long-term employment); *Id.* at 9 (Maximus made frequent misrepresentations over the course of multiple months that they were offering the <u>opportunity</u> for long-term or career employment).

This change—shifting the words around and adding the word <u>opportunity</u>—highlights the Plaintiffs' failure to comply with Rule 9(b) and to make factual allegations that identify "the who, what, when, where, and how of the misconduct charged" and identify "what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  *MWI Veterinary*,

**REPLY MEMORANDUM IN SUPPORT OF MAXIMUS INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT (Dkt. 5)** - 3

2012 WL 2576205 at *5; *Cafasso*, 637 F.3d at 1055.  MAXIMUS continues to have no notice regarding the required elements of Plaintiffs' fraudulent claims, whether as reformulated or as currently pled.  Notably, this phrase does not appear in MAXIMUS's offer letters or other documentation that formed the basis for the allegations in the Amended Complaint.  Dkt. 5-1 at 2-7.  Having failed to comply with Rule 9(b), MAXIMUS is left to guess at the factual basis related to Plaintiffs' fraud claim and the vague and ambiguous language upon which it relies.

        C.      *MEADE* IS FACTUALLY DISTINGUISHABLE AND DOES NOT ADDRESS RULE 9(B).

Plaintiffs rely on *Meade v. Cedarapids*, 164 F.3d 1218 (9th Cir. 1999) to further support their argument that they have sufficiently plead their claim for fraudulent misrepresentation.  *Meade*, however, is not on point because it involves a plant closure, as opposed to a reduction in force involving only a portion of the work force, and because it does not even address the particularity requirements of Rule 9(b).  Furthermore, the *Meade* plaintiffs, unlike Plaintiffs here, appear to have complied with Rule 9(b) by alleging facts to show the who, what, when, where, and how upon which their fraud claim was based.

*Meade* was a summary judgment decision where the district court, applying Oregon law, concluded a defendant did not fraudulently misrepresent facts concerning the imminent closure of an entire facility shortly after the plaintiffs were hired and moved their families to Eugene where the plant was located.  *Id.* at 1220.  The plaintiffs' fraud allegations related to statements made to them during the hiring process when they inquired about El-Jay's future growth.  *Id.* at 1221.  The Ninth Circuit affirmed in part and reversed in part, finding a question of fact whether, under the circumstances of that case, defendant had a duty to disclose the upcoming closure of the entire facility and whether defendant knew about the closure at the time the offers were made.  *Id.* at 1221-22.

Notably, *Meade* is silent as to the Rule 9(b) requirements in the context of a fraud claim and thus lends no support to Plaintiffs' assertion that they have complied with Rule 9(b).  And the level of factual specificity provided by the *Meade* plaintiffs can hardly be compared to the lack of specificity alleged by Plaintiffs here.  *Id.* at 1221.  *Meade* is inapposite and, contrary to

**REPLY MEMORANDUM IN SUPPORT OF MAXIMUS INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT (Dkt. 5) - 4**

Plaintiffs' response, does not support the conclusion that a defendant, like MAXIMUS, is not entitled to notice of the factual allegations upon which a fraud claim alleged against it is based.

### III.   PLAINTIFFS FAIL TO MAKE FACTUAL ALLEGATIONS SUFFICIENT TO SATISFY THE ELEMENTS OF THEIR FRAUD CLAIM.

Plaintiffs have failed to allege facts sufficient to satisfy any of the required elements for fraud.  Even Plaintiffs seem confused as to the representation upon which they rely; they now, in their response, rely on new and unpled factual allegations that not only fail to satisfy the standard, but which are also noticeably absent from their complaint.  In addition, although Plaintiffs claim to have plead the falsity of their new, unpled statement with particularity, they rely on a document that does not say what they claim it does and was created long after Plaintiffs were hired.  Plaintiffs' argument that they have satisfied the rules that apply to elements concerning MAXIMUS's state of mind likewise fails.  Although Rule 9(b) contemplates that Defendant's state of mind may be alleged generally, case law establishes that Plaintiffs' must make more of a showing than what they have done here.  Finally, Plaintiffs bypass their requirement to allege facts that they had a right to rely on MAXIMUS's alleged promises of an opportunity for career employment.  Plaintiffs' failure to address this element, coupled with their attempt to expand Idaho law to create a duty where none exists, should be rejected.

### A.   PLAINTIFFS CANNOT ESTABLISH THE FIRST ELEMENT OF FRAUD AS THEY HAVE FAILED TO ALLEGE AN ACTIONABLE REPRESENTATION.

#### 1.   Plaintiffs' Fraud Claim is Now Premised on Allegations Absent from Plaintiffs' Amended Complaint.

Plaintiffs have abandoned the facts they alleged in their Amended Complaint, citing instead in their response to newly created and unpled facts and theories.  According to Plaintiffs' Amended Complaint, MAXIMUS committed fraud by representing that: (1) Plaintiffs accepted "career" employment; and (2) Plaintiffs' employment with MAXIMUS would last beyond the first open enrollment period and continue through the duration of the CCO contract.  Dkt. 3, ¶ 67; *see also* Dkt. 5-1, pp. 2-5.

Plaintiffs now rely, instead, on new and unpled allegations that MAXIMUS committed fraud by representing they were being offered the opportunity for long-term or career

employment.  Dkt. 10, p. 12.  Nowhere are these allegations found within Plaintiffs' Amended Complaint.  Instead, these arguments appear for the first time in Plaintiffs' response brief, thus making it improper for Plaintiffs to rely upon them as the source for a fraud claim, much less to satisfy Rule 9(b).

        **2.**      **Even if Plaintiffs' Fraud Claim was Premised on Allegations found Within Their Amended Complaint, It Still Fails to State a Claim.**

Plaintiffs' new and unpled factual allegations—which are highly subjective and which can be interpreted in any number of ways—are too vague and indefinite to be actionable.  This is exemplified by Plaintiffs' inability to provide any related detail concerning the exact substance of this alleged offer, who made it, when it was made, what was meant, and how it was interpreted.[1]  Instead, without citing to any case law or other legal authority, Plaintiffs shift the burden back to MAXIMUS to make its own factual allegations, arguing that MAXIMUS should hunt this information down in its employee files or records.  Plaintiffs' attempt to require MAXIMUS to craft allegations against itself and somehow provide the basis for Plaintiffs' fraud claim, which they cannot themselves satisfy, makes no sense at all and must be rejected.

        **B.**      **PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO SHOW THE STATEMENT WAS FALSE WHEN MADE.**

Plaintiffs argue that they have adequately plead that their alleged fraudulent representation was false.  In support of their argument, they claim that MAXIMUS knew of the expected reduction in volume and the accompanying reduction in staff during the project planning phase.  Dkt. 10 at 12.  However, the factual allegations that Plaintiffs rely upon are insufficient for two reasons.

First, the document Plaintiffs rely upon does not say what they claim it does.  In fact, a review of the entire provision found within the Frequently Asked Questions (FAQs), establishes

---

[1] The word opportunity is found only in paragraphs 46, 72, 80, and 84-86 of the Amended Complaint.  Paragraph 46 refers to Plaintiff Harvey's offer letter and MAXIMUS's statement that "we believe this is an excellent career opportunity for you and that we can offer you challenges to grow professionally."  Dkt. 3, at Ex. A; Dkt. 3, ¶46.  This sentence from the offer letter is not an untrue statement or misrepresentation.  It is, at most, an opinion or belief.

**REPLY MEMORANDUM IN SUPPORT OF MAXIMUS INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT (Dkt. 5)** - 6

nothing other than that MAXIMUS expected a reduced volume of calls after the peak season, that call volumes were higher than expected, that call volumes were unpredictable, and that MAXIMUS was uncertain of the future direction that would come from its client in terms of staffing.  Hardly a smoking gun, this document establishes, at most, that there were factors beyond MAXIMUS's control that weighed into staffing, including unpredictable call volumes and client expectations, none of which it had the ability to ascertain until many months later and long after the Plaintiffs had been hired.  Plaintiffs cannot satisfy Rule 9(b) by citing to a document that does not state what they claim it does, and that was created long after they were hired, and that has not been linked in any way to the required elements to plead a fraud claim.

Plaintiffs also argue that "offers of long-term, potential career employment" were false "because all of the named Plaintiffs were part of MAXIMUS's reduction in force after less than ten months on the job." Dkt. 10 at 12.  Unlike in *Meade*, where all employees were terminated pursuant to a plant closure, MAXIMUS laid off some employees in April 2014, while keeping its facility open and keeping numerous employees on its payroll.  In fact, MAXIMUS remains open today and is gearing up for the beginning of the open enrollment period.  That Plaintiffs' were among some of the MAXIMUS employees who lost their jobs as part of the RIF establishes nothing to satisfy Plaintiffs' 9(b) burden.

    **C.**    **PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD THE ELEMENTS OF FRAUD RELATED TO MAXIMUS'S STATE OF MIND.**

Plaintiffs argue that they have satisfied the pleading requirements related to the elements of fraud concerning MAXIMUS's state of mind. Dkt. 10 at 13.  However, Plaintiffs fall short of these requirements, as well.  Although the general rule is that Plaintiffs may plead elements related to the defendant's state of mind generally, the reasoning behind this rule is that the factual particularity by which the other elements must be plead will generally have set forth facts from which an inference of scienter could be drawn.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1546 (9th Cir. 1994) (*overruled on other grounds*).  Here, Plaintiffs have failed to plead

any of the required elements with specificity, and thus there are no facts from which an element of scienter can be drawn.

      **D.**    **PLAINTIFFS FAIL TO CITE TO A SINGLE FACT THAT SHOWS THEY HAD A RIGHT TO RELY ON MAXIMUS'S ALLEGED REPRESENTATION AND THEY ATTEMPT TO EXPAND IDAHO LAW TO CREATE A DUTY TO DISCLOSE WHERE NONE EXISTS.**

As part of their fraud claim, Plaintiffs must allege they had a right to rely on MAXIMUS's alleged representation. Plaintiffs fail to cite to a single fact supporting this required element, arguing instead that *Watts v. Krebs*, 131 Idaho 616, 620-21, 962 P.2d 387, 391-92 (1998), creates an affirmative duty to disclose on the part of MAXIMUS. Dkt. 10 at 14.

Contrary to Plaintiffs' response, *Watts* does not create a duty on the part of an employer to disclose the potential for future lay-offs at some undefined point in the future during an interview and negotiation period. Nor is MAXIMUS aware of any other Idaho case law imposing such a duty on employers. *Watts*, instead, stands for the simple and unrelated proposition that there is a relationship of trust and confidence between cotenants, which in turn gives rise to a duty to disclose. *Id.* at 621, 962 P.2d at 392. Plaintiffs attempt to morph and expand this narrow and inapplicable legal theory to the facts at issue here should be rejected.

**IV.**    **PLAINTIFFS' RESPONSE FAILS TO ADDRESS THE FATAL DEFECTS OF THEIR PROMISSORY ESTOPPEL CLAIM.**

Plaintiffs' Response fails to address numerous deficiencies of their promissory estoppel claim highlighted by MAXIMUS in its opening brief. First, Plaintiffs fail to explain how their promissory estoppel claim can be reconciled with a 2014 Idaho Supreme Court case establishing that a promissory estoppel claim cannot proceed when there is evidence of adequate consideration. Second, Plaintiffs, both in their Amended Complaint and in their Response, fail to point to an actionable promise sufficient to give rise to a promissory estoppel claim. Finally, Plaintiffs fail to allege any factual allegations as to one of the required elements of their claim—that their reliance was reasonable and justified.

A.  **ALTHOUGH PLAINTIFFS CITE TO *PROFITS PLUS*, THEY FAIL TO EXPLAIN HOW THEIR CLAIM IS ANY DIFFERENT THAN THE PROMISSORY ESTOPPEL CLAIM REJECTED IN THAT CASE.**

As explained in MAXIMUS's opening brief, a claim of promissory estoppel is simply a substitute for consideration, not a substitute for an agreement. Dkt. 5-1, pp. 15-16 (citing *Profits Plus Capital Management, LLC v. Podesta*, 332 P.3d 785 (Idaho 2014) (reh'g denied (Sept. 15, 2014))). Where there is evidence of adequate consideration, the doctrine of promissory estoppel is of no consequence. *Id.* Although Plaintiffs cite to *Profits Plus* in their Response, they fail to explain how their claim is any different than the unsuccessful promissory estoppel claim at issue there. In that case, the court concluded the district court did not abuse its discretion in refusing to give a jury instruction on promissory estoppel because there was clearly consideration in the alleged agreement, and thus no need to apply the doctrine of promissory estoppel. *Id.* at *16.

Here, like in *Profits Plus*, there was adequate consideration when MAXIMUS offered a job to Plaintiffs, Plaintiffs accepted, and Plaintiffs received compensation in exchange for their work—a compensation agreement that lasted in many cases for the better part of a year. Plaintiffs fail to allege facts to show how promissory estoppel is an appropriate cause of action in light of the undisputed consideration exchanged between them and MAXIMUS as evidenced by their employment relationship that spanned many months.

B.  **PLAINTIFFS FAIL TO CITE TO AN ACTIONABLE PROMISE SUFFICIENT TO GIVE RISE TO A PROMISSORY ESTOPPEL CLAIM.**

Where an at-will employment relationship is at issue, the promise that forms the basis of a promissory estoppel claim must be clear and definite. *See Havens v. C & D Plastics, Inc.*, 876 P.2d 435, 443-44 (Wash. 1994) (citing cases that support this conclusion); *Gries v. Zimmer, Inc.*, 709 F. Supp. 1374, 1385 (W.D. N.C. 1989) (concluding promise of permanent employment too vague to satisfy element of promissory estoppel). Vague and ambiguous discussions of future employment are typical of the interview process, are consistent with the general hope and expectation of a long working relationship, and are not actionable. *Havens,* P.2d 435, at 445; *see also Vancheri v. GNLV Corp*, 777 P.2d 366, 422 (Nev. 1989) (rejecting promissory estoppel claims premised on general expressions of long-term employment or job advancement).

Plaintiffs' Response cites to alleged promises MAXIMUS made to Plaintiffs of an opportunity for career employment.  Promises of an opportunity for career employment are typical of the interview process and establish only that MAXIMUS was optimistic that it would enjoy a long and prosperous working relationship with the Plaintiffs—nothing more.  This promise lacks any definitive time frame and could be interpreted to mean any number of things as the phrase "opportunity for career employment" is vague, ambiguous, and highly subjective—especially when used in reference to employment aimed at implementing a new program at a brand new facility.  Contrary to Plaintiffs' Response, vague and ambiguous promises of an opportunity for career employment do not give rise to a promissory estoppel claim.

### C. PLAINTIFFS FAIL TO ALLEGE ANY FACTS TO ESTABLISH THAT THEIR RELIANCE WAS REASONABLE AND JUSTIFIED.

In Idaho, a Plaintiff must establish three elements to state a viable claim for promissory estoppel, one of which is to show that their reliance was reasonable and justified.  Plaintiffs ignore this element. In fact, Plaintiffs cite to no facts alleged in their Amended Complaint that address whether or how reliance on an alleged opportunity for career employment was reasonable or justified.  Nor is it likely any exist, as neither the Plaintiffs nor MAXIMUS had any experience working together and neither had any way of knowing whether long-term employment was in their mutual best interests or not.

### V. CONCLUSION

Plaintiffs' First Amended Complaint ignores the requirements of Rule 9(b) and lacks factual allegations to provide MAXIMUS with even the most minimal notice of the allegations upon which it is based.  Likewise, Plaintiffs have failed to allege facts that establish compliance with each of the nine elements of fraud.  Finally, Plaintiffs have provided no explanation as to how their promissory estoppel claim is viable in light of recent Idaho Supreme Court case law establishing that promissory estoppel is a substitute for consideration and is not a viable claim when adequate consideration clearly exists.  MAXIMUS requests that the court dismiss Plaintiffs' Amended Complaint.

DATED this 26th day of September, 2014.

                          HOLLAND & HART LLP

                          By    *s/B. Newal Squyres*
                               B. Newal Squyres, of the Firm
                               Attorneys for Defendant MAXIMUS Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of September 2014 I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

- **Howard A Belodoff**
  howardbelodoff@idaholegalaid.org, bevallen@idaholegalaid.org

- **Jeremiah Matthew Hudson**
  jeremiah@frhtriallawyers.com, jason@frhtriallawyers.com,
  jennifer@frhtriallawyers.com

            *s/B. Newal Squyres*
            of HOLLAND & HART LLP

7160826_2