UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REGIS HARVEY, AMANDA COLLINS, ANDREA MCDONALD, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MAXIMUS INC.,<br><br>Defendant. | Case No. 1:14-cv-00161-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Pending before the Court is plaintiffs Regis Harvey's, Amanda Collins's, and Andrea McDonald's (collectively the "Plaintiffs") Motion to Certify Class. (Dkt. 28).

Plaintiffs seek to certify a class to challenge MAXIMUS Inc.'s hiring and firing of employees at their call center in Boise, Idaho. MAXIMUS operated call centers in Boise, Idaho and Brownsville, Texas to field calls regarding the Affordable Care Act. (Dkt. 36 at 2). The Centers for Medicare & Medicaid Services contracted with General Dynamics Information Technology ("GDIT"), who in turn contracted with MAXIMUS to operate these call centers. *Id*. The subcontract became effective on April 15, 2013. *Id*. Hiring for the call center in Boise began in summer 2013 with additional hiring extending into fall of 2013. *Id*. at 3.

MAXIMUS hired three categories of employees to staff its Boise call center. (Dkt 28-1 at 2). Customer Service Representatives ("CSRs") answered incoming calls. *Id*. Trainers were responsible for training incoming CSRs and for knowing company materials. *Id*. First-Level Supervisors were responsible for a team of approximately 14 CSFs and monitored the CSRs' work product and productivity. *Id*. Most Trainers were hired by mid-June 2013. (Dkt. 36 at 5). Supervisors were hired by late July 2013. *Id*. Maximus hired about 1,800 CSRs in waves, with the first wave beginning training in mid-September 2013 and the second wave on October 1, 2013. *Id*. MAXIMUS continued to hire CSRs throughout the Fall of 2013. *Id*.

Harvey was employed by MAXIMUS as a Trainer and was hired in July 2013. Am. Compl. ¶ 13. Harvey had previously been employed by Verizon for six years and left his job there to work at MAXIMUS. *Id*. Collins was employed by MAXIMUS as a CSR and was hired in July 2013. *Id*. ¶ 14. She had previously worked at ITT Technical Institute as an Instructor for four years and left that employment for the job at MAXIMUS. *Id*. McDonald worked for Maximus as a Supervisor and was hired in July 2013. *Id*. ¶ 15. Prior to working at Maximus, McDonald had a custom clothing and show company. *Id*.

When hiring employees, Maximus sent every employee an offer letter, which the Plaintiffs received. (Dkt. 36 at 9). The letters contained language stating that the offer was one of "full-time employment" and that Maximus believed "this is an excellent career opportunity for you and that we can offer you challenges to grow professionally."

*Id*.  The offer letters contained an "Employment At-Will" clause.  *Id*.  Offer letters to limited-service employees stated, "We believe this will be an excellent career choice offering an opportunity for professional growth."  *Id*.  Offer letters to Trainers and Supervisors stated, "Your compensation in succeeding years will be considered for adjustment as part of our normal performance review process."  *Id*.  Offer letters to regular-capacity CSRs stated, "Your succeeding compensation reviews and adjustments will be contingent on the federally established annual Wage Determination rate for your position and locality."  *Id*.  Some employees, including Collins, signed an "Employee Acknowledgment Form" which contained language stating that the employee recognizes that employment was at-will and there was "no specific length of employment."  *Id*. at 9-10.

In addition to these written statements, Plaintiffs also allege that oral promises were made to them.  Am. Compl. ¶ 43.  Plaintiffs allege that that MAXIMUS told Plaintiffs that regular capacity employees "would remain employed after the first open enrollment period to service future enrollment periods through the duration of the CCO contract."  *Id*.  Further, MAXIMUS allegedly told Plaintiffs during hiring that "after the CCO contract they would work on other projects for MAXIMUS."  *Id*. ¶ 44.

In August 2013, GDIT determined that the projected call volume indicated a "ramp down" beginning in Spring of 2014 for the MAXIMUS Boise call center.  *Id*. at 5.  According to MAXIMUS, it became apparent that a significant reduction in employees would be necessary in Boise.  *Id*.  However, MAXIMUS hired an addition 600 CSRs

after January 1, 2014 in temporary positions for a limited duration because of the impending reduction in force. *Id*. at 6.

On April 25, 2015, MAXIMUS terminated 850 employees. *Id*. MAXIMUS terminated 777 CSRs, 57 Supervisors, and 16 Trainers. *Id*. Of the 850 employees terminated, 199 of these were limited capacity CSRs. *Id*. The 651 regular-capacity employees were offered two weeks' severance pay in exchange for a signed Separation Agreement and Release. *Id*. Out of the employees offered the severance pay, 526 employees signed a Separation Agreement. *Id*. The Separation Agreement included a clause releasing MAXIMUS of all claims, including those arising from a class action lawsuit. *Id*.

Plaintiffs bring claims for fraudulent misrepresentation and promissory estoppel. Am. Compl. 12-15 (Dkt. 3). Plaintiffs allege that MAXIMUS's hiring process promised Plaintiffs and the proposed class members career employment when MAXIMUS had no intention of retaining the new employees for long-term employment. (Dkt. 28-1 at 3-4). Plaintiffs seek to certify a class of all "similarly situated persons hired by Maximus beginning in approximately June 2013 up until January 1, 2014, and were employed at its Boise call center as [CSRs], Trainers, and First-Level Supervisors." *Id*. at 4.

## LEGAL STANDARD

Under Rule 23 of the Federal Rules of Civil Procedure, plaintiffs must "affirmatively demonstrate" that class certification is appropriate. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Under Rule 23(a), the Plaintiffs must show that: (1)

the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements of 23(a) are designed to "[ensure] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Id*. at 349.  This Court must, following a "rigorous analysis," be satisfied that Plaintiffs will fulfill that role.  *Id*. at 351.

Second, Plaintiffs must show that the proposed class satisfies at least one of the Rule 23(b) requirements.  Plaintiffs rely on Rule 23(b)(3), which applies when questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) also provides that matters pertinent to these findings include: (1) the interest of the class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  *Id*.

MAXIMUS challenges Plaintiffs' motion on the commonality, typicality, and adequacy of representation requirements of Rule 23(a).  Furthermore, MAXIMUS

contends that the predominance test and superiority requirement of Rule 23(b)(3) are not met.

## ANALYSIS

Plaintiffs fail to meet the typicality requirements of Rule 23(a) and the predominance standard of Rule 23(b)(3). Because these elements are not met, the Court declines to certify the proposed class.

### a. *Typicality*

The typicality prerequisite of Rule (23)(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The commonality and typicality requirements of Rule 23(a) "tend to merge" because both "serve as guideposts for determining . . . whether the named plaintiff's claim and class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349, n.5.

The Plaintiffs cannot meet the typicality elements of Rule 23(a) because none of them signed the Separation Agreement upon termination releasing their claims against MAXIMUS. Out of the 651 regular-capacity employees terminated during the reduction in force, 526 signed the Separation Agreement that contained a clause releasing MAXIMUS from all potential claims, including those arising from a class action lawsuit, and received compensation for signing the agreement. Plaintiffs are clearly atypical of the vast majority of the proposed class in that they did not sign the Separation Agreement.

**MEMORANDUM DECISION AND ORDER - 6**

In their Motion for Class Certification (Dkt. 28) and reply brief (Dkt. 37), Plaintiffs failed to mention or offer any explanation of how Plaintiffs are typical of the class members when they did not sign the Separation Agreement that over 80 percent of the proposed class signed.  Plaintiffs attempted to distinguish themselves from the case law presented by MAXIMUS in MAXIMUS's response brief, but could not offer a response other than the fact that the Separation Agreements were a part of the alleged fraudulent scheme.  (Dkt. 37 at 15-16).  However, merely alleging that the Separation Agreements are a part of the claim does not explain how Plaintiffs are typical of the class when they did not sign the Separation Agreements.  Plaintiffs are atypical of the proposed class specifically because they did not sign the Separation Agreements and, as such, cannot claim to represent the class members who did.  For this reason, Plaintiffs fail to meet the typicality element of Rule 23(a).

      **b.** *Predominance*

In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Rule 23(b)(3). Rule 23(b)(3) requires that common questions must "predominate over any questions affecting only individual members," and that the class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*

*v. Windsor*, 521 U.S. 591, 608, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). This analysis presumes the existence of common issues of fact or law; thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. *Id*.

Plaintiffs have claims of fraud and promissory estoppel remaining in this action. To prove fraud under Idaho law, Plaintiffs must prove the following nine elements:

> (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the [representation]; (8) his right to rely thereon; (9) his consequent and proximate injury.

*MWI Veterinary Supply Co. v. Wotton*, 2012 WL 2576205, at *2 (D. Idaho July 3, 2012). To prove promissory estoppel, Plaintiffs must prove that "(1) one party's reliance on a promise [created] a substantial economic detriment, (2) the reliance was or should have been foreseeable, and (3) the reliance was reasonable and justified." *Profits Plus Capital Mgmt. LLC v. Podesta*, 156 Idaho 873, 891, 332 P.3d 785, 803 (2014) (citation and quotation marks omitted).

Both the fraud and promissory estoppel claims contain an element of individual reliance. MAXIMUS argues that "individualized reliance issues related to plaintiffs' knowledge, motivations, and expectations bear heavily on the causation analysis," *Poulos v. Caesar's World, Inc.*, 379 F.3d 654, 665 (9th Cir. 2004), and that the claims Plaintiffs bring for fraud and promissory estoppel clearly require a showing of individualized

reliance to prove causation that cannot be presumed on a class-wide basis. Plaintiffs respond that individual reliance does not predominate over the common question and that they have "established a class-wide inference of reliance . . . because the logical motivation for accepting a 'career opportunity' is limited to those who are seeking an opportunity for a career." Dkt. 37 at 9.

Plaintiffs are incorrect, however, because the issue here of predominance is not whether class members were accepting a job with career opportunities. Rather, it is whether the class members *relied* on an alleged promise, whether this reliance can be presumed on a class-wide basis, and whether the common question predominates over any issues of individual reliance. It is not enough to merely allege that it is obvious that the class members expected career employment when accepting employment with MAXIMUS.

The Supreme Court recognized a distinction between presumed and individual reliance in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S.Ct. 2398 (2014). There, the Court held in a securities fraud case that a defendant has a right to rebut a presumption of reliance during class certification. *Id.* at 2414-17. The Court held that if reliance could not be presumed, a suit "cannot proceed as a class action: Each plaintiff would have to prove reliance individually, so common issues would not 'predominate' over individual ones, as required by Rule 23(b)(3). *Id*. at 2416.

As MAXIMUS argued, the leading Ninth Circuit case on this issues is *Poulos*, 379 F.3d 654. There, the Ninth Circuit noted the "shortcut of a presumption of reliance

**MEMORANDUM DECISION AND ORDER - 9**

typically has been applied in cases involving securities fraud and, even then, the presumption applies only in cases primarily involving a 'failure to disclose . . . .'" *Id*. at 666.  The Ninth Circuit declined to apply this presumption of reliance in *Poulos* because the claims were "best characterized as . . . affirmative misrepresentations . . . that would not be entitled to the presumption." *Id*.

As a starting point, Plaintiffs' case is not a securities fraud case and instead revolves around the issue of what promises or representations were made to Plaintiffs when they were offered employment with MAXIMUS.  This is similar to *Poulos* in that Plaintiffs' claims allege MAXIMUS made affirmative misrepresentations rather than failed to disclose a fact.  Therefore, Plaintiffs are most certainly not entitled to a presumption of reliance.

Plaintiffs have not shown that presumed reliance on a class-wide basis is proper here because whether the claims succeed clearly turns on individual reliance of an alleged promise of career employment.  Each individual class members' experiences and decisions in accepting employment could vary greatly.  It has been shown through the evidence presented that the named Plaintiffs accepted employment for different reasons, and it is unclear whether they relied on an alleged promise of "career employment" in accepting the employment.  Here, Plaintiffs' "suggestion that 'common sense' links" accepting employment to a reliance on a promise of career employment is not sufficient to grant presumed reliance.  *Id*. at 667.

**MEMORANDUM DECISION AND ORDER - 10**

Plaintiffs' fraud and promissory estoppel claims clearly require a showing of individual reliance, and there are too many unanswered questions in this case to establish a presumption of reliance.  For example, did each individual class member rely on the offer letters' language of a career opportunity when accepting employment?  And, if not, did the class members rely on an oral promise of career employment?  If so, what exactly was said in each individual interview to each class member that could have been a promise, and were these oral promised said in exactly the same way in every interview?  Clearly there are fundamental issues of reliance here that Plaintiffs have not provided answers to.  Further, in depositions, the named Plaintiffs did not establish that they relied on written or oral representations of career employment in accepting the positions at MAXIMUS.  The Court cannot presume reliance on a class-wide basis when there are clear discrepancies and unanswered questions regarding individual reliance for each plaintiff.

Discovery is over in this case, and Plaintiffs have not shown that presumed reliance is proper here.  Because individual issues of reliance clearly predominate over any common issues, the predominance element of Rule 23(b)(3) is not met.

## CONCLUSION

Because Plaintiffs have failed to meet the typicality requirement of Rule 23(a) and the predominance standard of Rule 23(b)(3), the Court need not discuss the remaining elements of Rule 23(a) or Rule 23(b)(3) and declines to do so.  As such, the Plaintiffs' Motion to Certify class is denied.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Class Certification (Dkt. 28) is **DENIED**.

DATED: December 15, 2016

B. Lynn Winmill
Chief Judge
United States District Court